## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SHANNON C. DUMOLT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  CIV-07-1055-F |
| | ) | |
| MARY E. PETERS, SECRETARY, | ) | |
| U.S. DEPARTMENT OF | ) | |
| TRANSPORTATION, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant's motion for summary judgment, filed November 17, 2008, is before the court.  (Doc. no. 29.)  Plaintiff responded by objecting to the motion, and no reply brief was filed.  Accordingly, the motion is ready for determination.

### Introduction

Plaintiff Shannon C. Dumolt alleges that after ten years of employment, she was treated wrongfully by her employer and ultimately terminated from her job as a highway engineer in the Oklahoma Division of the Federal Highway Administration (the "FHWA"), an agency within the United States Department of Transportation. Ms. Dumult brings two claims against the defendant.  In count one of the complaint she alleges disability discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*  In count two she alleges she was terminated in retaliation for exercising her protected rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*  Defendant moves for summary judgment on both claims.

Standards

Under Rule 56(c), Fed. R. Civ. P., summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant. United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

The Parties' Contentions and Background Fact-Findings

Plaintiff suffered a spinal cord injury as a result of a car accident in 1997. Plaintiff contends that in January of 2005 she became unable to work due to an intractable pain condition and related depression and anxiety, and that the manner in which she was treated at work contributed to these difficulties. Plaintiff contends she was terminated due to her disability or due to being regarded as a person with a disability, and also in retaliation for prior protected activity. In her administrative claim underlying this action, plaintiff contends her employment problems began when Kevin McLaury became Acting Division Administrator for the FHWA's Oklahoma

Division in 2005.  Plaintiff's response brief, however, makes clear that she does not press any claims based on matters that occurred at a time earlier than immediately prior to events which directly led to her suspension and termination in early 2006.[1]

The court finds that following facts are undisputed.[2]

During the relevant time period, plaintiff's first-level supervisor was Kevin McLaury, Assistant Division Administrator of the Oklahoma Division.  Her second-level supervisor was Gary Corino, Division Administrator.  Plaintiff's third-level supervisor was James E. St. John, FHWA Director of Field Services-South, in Atlanta, Georgia, the official who ultimately determined that plaintiff's employment would be terminated.

On January 30, 2006, plaintiff returned to duty at the FHWA after a fourteen-day suspension without pay.  (The stated reasons for the suspension were inappropriate behavior and failure to follow instructions.)  At that time, plaintiff informed her supervisor that she was unable to work.  Her underlying administrative charge indicates that she presented a letter from her doctor stating she was unable to work.  (Doc. no. 29, ex. A.1., p. 5.)  The record includes a "psychology progress report" by Stephen Carella, Ph.D., regarding services rendered to plaintiff on January 23 and 27, 2006.  (Doc. no. 29, ex. 8.)  The report states, among other things, that "this individual is experiencing significant psychological and emotional difficulties that would require her to be off work on medical leave until these situations can be stabilized."  The report notes that plaintiff's pain, depression and anxiety appear to be

_____

[1]The response brief repeatedly states that "only events occurring immediately prior to January 30, 2006, and after that date are relevant to Plaintiff's claims."  (See, e.g., doc. no. 33, p. 3.)

[2]Plaintiff's response brief states that some of these facts are "disputed as irrelevant" (see, e.g., doc. no. 33, p. 3), but plaintiff offers no evidence to dispute them.

out of control, and refers to a psychology report of June 21 (presumably of 2005) and of July 15, 2005, which recommended that accommodations be made for plaintiff due to her emotional and chronic pain states. (Doc. no. 33, ex. 6.)  The report states Dr. Carella's impression that plaintiff, at the time of the report in January of 2006, was "temporarily totally disabled from performing any work at this time."  It states that plaintiff's prognosis is "unknown with respect to returning to work and [with respect to her] emotional state."  The report states that Dr. Carella may be contacted personally for further details.  (*Id.*)

After her appearance at work on January 30, 2006, plaintiff left the office and never reported for work again.

Also on January 30, 2006, plaintiff signed a "Notice of Occupational Disease and Claim for Compensation" with the U.S. Department of Labor, referred to by the parties, and by the court in this order, as a workers' compensation claim.  (Doc. no. 29, ex. 32.)  The workers' compensation claim contended that plaintiff suffered from chronic pain, anxiety and depression associated with her work.  It contended that plaintiff had "been given entirely too much work in a short amount of time," and stated that "[i]t is very stressful to do a good job knowing that my time is spread so thin" which "leads to increased chronic pain which causes excessive absences for medical purposes." (*Id.* at p. 8.)  The claim complains about plaintiff's supervisor's way of "'checking up' on how I'm doing," and about the manner in which plaintiff's supervisors deal with problems at work creating a "truly hostile work environment [that] adds stress and causes depression...."  (*Id.* at pp. 8-9.)[3]

_____

[3]The workers' compensation claim was denied on May 1, 2008, because "[p]ersonnel and administrative matters of an agency are not considered to be factors of Federal employment, and a reaction to such factors does not constitute an injury arising within performance of duty." (Doc. no.
(continued...)

In a letter of February 7, 2006, acknowledging receipt of plaintiff's workers' compensation package, Lead Human Resources Specialist for the defendant, Michael Blaylock, advised plaintiff that defendant would schedule a fitness for duty examination for her.  He requested that plaintiff return a medical release so that her medical records could be provided to the agency's medical certifying officer.  (Doc. no. 29, ex. 23.)  The letter notified plaintiff that she would be placed in "Absent Without Leave" (AWOL) status if the release was not returned by February 13, 2006. Plaintiff did not return the release.[4]

Defendant notified plaintiff in a letter from Mr. McLaury dated February 15, 2006, that defendant needed "more information from your psychologist to identify these specific accommodations and the expected duration of your absences." (Doc. no. 29, ex. 24.)  This letter again advised of defendant's plan to schedule a fitness for duty exam and asked plaintiff to complete the consent form by February 23, 2006. *The letter advised plaintiff that, "We need your cooperation in our efforts to accommodate you."* (Emphasis the court's.)  It also advised that plaintiff's accumulated leave had been exhausted, that plaintiff was absent without leave, and that if the consent form was not returned by February 23, 2006, plaintiff would be placed in AWOL status beginning February 24, 2006.  The letter stated that "[e]xcessive AWOL will lead to disciplinary action that may include removal from federal service." (*Id.*)

---

[3](...continued)
29, ex. 32, notice of decision.)  The decision is not material, but the workmen's compensation proceedings are described because they explain some of the parties' communications.

[4]The moving papers refer to this document as a release and also as a consent form.  The court uses these terms interchangeably to refer to the same document.

By letter from plaintiff's counsel dated February 20 or 21, 2006 (both dates appear on the letter), plaintiff responded, through her counsel, that following her workers' compensation claim she has "made no effort or contended that she is fit and able to return to work." The letter states "she has submitted all information required to initiate a claim for workers' compensation benefits and is pursuing a disability retirement." (Doc. no. 29, ex. 25, p. 2.) In response to the request that she submit to a fitness for duty examination and sign a release for her medical records, the letter indicates plaintiff's counsel's understanding that the request had been postponed based on plaintiff's request that she be shown defendant's authority to make these requests. The letter further indicates that no authority had been shown for the right to require a fitness for duty examination for situations in which an employee was not seeking to return to or remain at work.

The letter states that "as Ms. Dumolt is not seeking to return to work, nor is she challenging a concern put forth by the FHWA that she is not capable of working, these authorities do not apply." (*Id*. at p. 2.) The letter indicates that plaintiff had authorized a representative of the FHWA to contact her doctor and that she had no objection to Mr. Blaylock or another individual from human resources obtaining information from her doctor, but that she objects to Mr. McLaury having access to her private medical information. (*Id*. at p. 3.) The letter states that absent the presentation of the FHWA's authority to compel plaintiff to submit to a fitness for duty exam or to grant access to her medical records, "at this point, Ms. Dumolt will not comply with McLaury's ultimatum to comply with his demands or be placed in an Absent Without Leave (AWOL) status." (*Id*.)

On March 3, 2006, Mr. McLaury wrote plaintiff advising her that leave might be available to her under the Family Medical Leave Act. (Doc. no. 29, ex. 26.) Plaintiff declined to pursue FMLA leave. (Doc. no. 29, ex. 29, p. 2, and ex. 30, p. 3.)

Plaintiff remained absent from work without leave. By letter of March 17, 2006, from Mr. Corino, plaintiff was notified that the FHWA considered her to be in AWOL status. (Doc. no. 29, ex. 29.) The letter noted plaintiff's failure to comply with leave procedures. (*Id*., p. 1.) The letter proposed her removal after a thirty-day notice period during which she could respond and before which no decision to remove her would be effective. (*Id*., p. 1.) The letter stated that if plaintiff wished defendant to consider any medical condition which might have contributed to her actions or which might bear upon the proposed removal, she must furnish medical documentation within ten days. (*Id*., p. 4.)

Plaintiffs' attorney responded with a letter explaining plaintiff's position. (Doc. no. 29, ex. 30.)

On April 18, 2006, plaintiff received a letter from Mr. St. John terminating her employment effective April 20, 2006. (Doc. no. 29, ex. 1.A., p. 5, regarding receipt date; letter at doc. no. 29, ex. 31.) The letter reviewed past events and indicated plaintiff had been absent from work since January 30, 2006. The letter noted plaintiff's purported disability was "open ended" and that she had given no date upon which she would resume her duties. (*Id*., p. 1.) The noted plaintiff had not provided consent for defendant to obtain additional information from plaintiff's doctor which was needed "to make a judgment of your condition, its duration, and your ability to work or assist others who must do your assigned work...." (*Id*., pp. 1-2.) Mr. St. John's letter further stated, "I find the nature and seriousness of your conduct, that is, AWOL, to be one of the most serious offenses an employee can commit in the federal

civil service...." (*Id.*, p. 3.)  The letter concluded there were no lesser sanctions that would be appropriate, and no mitigating circumstances or alternative solutions.  The letter advised plaintiff that she was removed from federal service.  (*Id.*, p. 4.)

Per the above-described documents, the FHWA terminated plaintiff's employment effective April 20, 2006, based on her continued AWOL status.

<u>Discussion</u>

Plaintiff's response brief contends, at times  (see, e.g., doc. no. 33, p. 20), that defendant's stated reason for her termination constitutes direct evidence of disability discrimination and retaliation so that the burden-shifting analysis of <u>McDonnell Douglas Corp. v Green</u>, 411 U.S. 792 (1973), does not apply.  The court disagrees. Defendant's termination for the stated reason that plaintiff was absent without leave does not constitute direct evidence of discrimination or retaliation.  Plaintiff did not provide the consent form regarding her medical records in the manner requested, and did not pursue further evaluation of her fitness for work or the possibility of accommodation of her condition.  These events, which were within plaintiff's control and not caused by her condition, caused or at least contributed to the fact that defendant deemed plaintiff's absence to be unexcused.  There has been no direct showing that a discriminatory or retaliatory animus played a motivating part in defendant's employment decisions.  Accordingly, the court applies the <u>McDonnell Douglas</u> burden-shifting analysis.  Alternatively, the court finds that under a direct evidence analysis the results stated in this order would be the same.

<u>1.  Plaintiff's Disability Discrimination Claim</u>

The elements of a *prima facie* case of wrongful termination under the Rehabilitation Act require a plaintiff to show:  (1) that she is a disabled person within the meaning of the law;  (2) that she can perform, either with or without reasonable

accommodation, the essential functions of the desired job, regardless of the disability; and (3) that she was discriminated against because of her disability. Cummings v. Norton, 393 F.3d 1186, 1189 (10th Cir. 2005); Bartee v. Michelin North America, Inc., 374 F.3d 906, 912, n.4 (10th Cir. 2004).[5] If plaintiff establishes a *prima facie* case of disability discrimination, then defendant must articulate a legitimate, non-discriminatory reason for the termination, after which plaintiff must identify evidence of pretext in order to avoid summary judgment. Cummings, 393 F.3d at 1189.

With respect to the first *prima facie* element, an individual with a disability is a person who has a physical or mental impairment which substantially limits one or more of the person's major life activities, or who has a record of such an impairment, or who is regarded as having such an impairment. 29 U.S.C. §705(20)(B), §705(9)(B)(defining "disability"). Although there are indications in documents from plaintiff's doctors that there were issues about plaintiff's condition and her ability to perform work at the time those documents were written, there is no evidence that plaintiff was substantially limited in one or more of her major life activities or that she had a record of such an impairment.

Furthermore, plaintiff contends that she was substantially limited in the major life activity of working. (Doc. no. 33, p. 13.) There is no evidence, however, that she could not perform work for a particular duration of time or at any specified time in the future. Moreover, when the major life activity under consideration is that of working, the phrase "substantially limits" requires, at a minimum, that a plaintiff show she is unable to work in a broad class of jobs. Sutton v. United Air Lines, Inc., 527 U.S.

---

[5]Cummings is a Rehabilitation Act case and Bartee is an Americans With Disabilities Act case. These Acts impose identical obligations on employers. Cisneros v. Wilson, 226 F.3d 1113, 1124 (10th Cir. 2000), overruled on other grounds in Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356 (2001).

471, 491-92 (1999).  Plaintiff has identified no such evidence.  At best, the evidence suggests that she may have been temporarily unable to work at her particular job at the particular time the documents in question were written by her doctors or for some undefined period after those documents were written.[6]

Plaintiff's underlying charge states that, "While my condition may not have factually risen to the level of a disability, as defined by the ADA and/or other applicable laws[,] when McClaury assumed Kudzia's position, he certainly regarded me as a person with a disability and harassed me as a result."  (Doc. no. 29, ex. 1.A., p. 4.)  Plaintiff, however, has identified no evidence indicating her employer regarded her as a person with a disability within the meaning of the Rehabilitation Act.  To the contrary, the evidence shows that defendant attempted to obtain additional information regarding plaintiff's condition and questioned whether she was disabled within the meaning of the Act.

It is not clear whether plaintiff asserts that she had a documented record of a disability within the meaning of the Act;  if she does, she has not identified medical records showing that to be the case.

Accordingly, plaintiff has not satisfied the first element of a *prima facie* discrimination claim.

---

[6]In addition to the January, 2006 report from Dr. Carella, plaintiff presents a letter from Michael J. Schwartz, M.D.  (Doc. no. 33, ex. 3.)  The letter states that plaintiff's pain condition "no doubt" makes it more difficult for her to travel any significant distance by auto or by plane, unless accommodations are made.  The letter states that "the patient is currently, in her opinion, experiencing a great deal of persecution at work...and that anyone, including the patient, would have difficulty performing work required as per her job description" in these circumstances.  The letter never states that plaintiff is substantially limited in her ability to perform her work or in her ability to perform a broad range of work.  The letter does not state any expected duration of plaintiff's condition.

The second element requires a showing that plaintiff was qualified for the job in question with or without accommodation. The record evidence shows plaintiff's position was that she could not be present at work. She has identified no evidence indicating that her job could be performed from home. She has identified no evidence showing that she suggested or sought a reasonable accommodation. *See*, Wells v. Shalala, 228 F.3d 1137, 1144, 1145 (determining whether plaintiff is qualified depends on whether she can perform essential functions of the job and if not, on whether any reasonable accommodation could be made; the relevant inquiry is whether plaintiff provided evidence that she could be reasonably accommodated; plaintiff "bore the initial burden of initiating an interactive process...by proposing an accommodation and showing that the accommodation was objectively reasonable.") For example, plaintiff has identified no evidence, and the court has found none, showing a request for a period of temporary leave to accommodate her condition.[7] Plaintiff's own cases state that an employee should indicate the duration of her disability, but there is no evidence that plaintiff did this. Failure to provide evidence of the expected duration of the disability, or of the absence, is a failure to show that reasonable accommodation is possible. *See*, Cisneros v. Wilson, 226 F.3d 1113, 1129 (10th Cir. 2000), *overruled on other grounds*, and cases cited there.

Plaintiff's position was that she was not able to return to work, that she was seeking to retire on some type of disability, and that she did not need to comply with

---

[7]Plaintiff relies on a statement in the Carella report that "this individual is experiencing significant psychological and emotional difficulties that would require her to be off work on medical leave until these situations can be stabilized." (Doc. no. 33, ex. 6, p. 1.) If this statement by Carella, which suggests no duration, is plaintiff's only request to her employer for an accommodation of her purported disability, it is inadequate as a matter of law. Nor do plaintiff's letters by her attorneys request any proposed accommodation that would allow her to continue to work. Rather, these letters repeatedly refer to plaintiff's request for "disability *retirement*," indicating plaintiff did not anticipate that she could or would ever return to work. (Emphasis added.)

the employer's requests regarding the medical consent form and fitness for duty evaluation. This position is at odds with the requirements of the Rehabilitation Act for several reasons. The Rehabilitation Act does not require a defendant to accommodate a disabled employee with an indefinite absence. Courts are in agreement that attendance is generally a job requirement under the Americans with Disability Act or the Rehabilitation Act. *Id.; and see*, <u>Waggoner v. Olin Corp.</u>, 169 F.3d 481, 483, 484 (7th Cir. 1999) (employer not required to allow erratic attendance; generally attendance is a requirement of a job; the ADA, like the Rehabilitation Act, requires line-drawing but it is clear a qualified person must be "able to meet all of a program's requirements in spite of his handicap"). Additionally, the Rehabilitation Act only requires an employer to reasonably accommodate a disability if, by doing so, the employee can continue to perform her job. With or without accommodation, plaintiff has not shown that she intended to, or was able to, perform her job. She also has not shown that she initiated or cooperated in an interactive process regarding accommodation as required under the Rehabilitation Act. Plaintiff has not shown that accommodation was possible or that she suggested any particular accommodation. The court rejects plaintiff's argument that the agency is not entitled to summary judgment because it has not shown that the requested accommodation would create an undue hardship. *See*, <u>Boykin v. ATC/Vancom of Colorado, L.P.</u>, 247 F.3d 1061, 1064 (10th Cir. 2001) (if plaintiff makes a facial showing that accommodation is possible, employer must then show it is unable to provide accommodation to avoid liability). There is no evidence that plaintiff requested a reasonable accommodation much less that defendant rejected her request or incorrectly claimed that a proposed accommodation would constitute an undue hardship.

Accordingly, plaintiff has not established the second element of a *prima facie* case which requires a showing that plaintiff can perform the job with or without accommodation.

To establish the third element, causation, plaintiff relies on defendant's statement that it terminated plaintiff because she was AWOL.  Plaintiff argues this statement is direct evidence of disability discrimination because an employer is not allowed to discriminate against an employee based on disability-caused conduct.  Plaintiff argues that her absenteeism was disability-caused conduct.

The court rejects plaintiff's position for several reasons.  First, defendant does not rely on the bald fact that plaintiff missed work as the reason for plaintiff's termination.  Mr. St. John's letter terminating plaintiff refers to her failure to return the consent form or submit to further evaluation.  Additionally, it was not the fact that plaintiff was absent but the fact that she was absent *without leave* which defendant gave as the reason for the termination.  As previously noted, the fact that plaintiff was absent without leave was not "conduct" caused by plaintiff's purported disability.  Her ability to comply with her employer's requests for additional information was a matter that was unaffected by her condition.

Second, plaintiff's authorities for the proposition that an employee may not be terminated for condition-caused conduct, such as the cases discussed in Den Hartog v. Wasatch Academy, 129 F.3d 1076, 1086 (10th Cir. 1997), are distinguishable.  These cases address, for example, eccentric or unusual conduct caused by an employee's mental disability.  *Id.*  They conclude that an employer should consider whether such disability-caused misconduct might be remedied through a reasonable accommodation.  *Id.* at 1088.  That is a situation factually very different from the

instant situation, where plaintiff contends her AWOL status was caused by her condition.

Other than relying on defendant's stated reason for the termination, plaintiff has identified no evidence of causation, and the court finds none.  Accordingly, plaintiff has not established the third element of her *prima facie* case.

Defendant has articulated a legitimate reason for the termination and its treatment of plaintiff leading up to termination:  plaintiff's prolonged absence without leave as contributed to by her failure to provide information about her condition and her failure to follow leave procedures.  (See doc. no. 29, ex. 29 letter from Mr. Corino, and ex. 31 letter from Mr. St. John.)  Plaintiff has identified no evidence that its stated reason for its treatment of plaintiff is merely a pretext for disability discrimination.

For each of the above-stated reasons, any one of which would be sufficient, defendant is entitled to summary judgment on plaintiff's disability discrimination claim alleged in count one.

2.  Plaintiff's Retaliation Claim

To establish a *prima facie* case of retaliation, plaintiff must show:  (1) that she engaged in protected activity;  (2) that she suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse action.  Vaughn v. Epworth Villa, 537 F.3d 1147, 1150 (10th Cir. 2008), *petition for cert. filed* (Dec. 24, 2008) (No. 08-819).  Defendant must then articulate a legitimate reason for the termination after which plaintiff must identify evidence of pretext to avoid summary judgment.

As to the first element of plaintiff's *prima facie* case of retaliation, identification of protected activity, the court notes that in her charge at the agency level, plaintiff identified no specific protected activity as the basis of her retaliation

claim.  (Doc. no. 29, ex. 1.A.;  see also, undisputed fact no. 10, which reviews the prior EEO activity in 2001 and 2002 based on events in 2000 through 2002.)  Perhaps because of this, the official investigating the retaliation claim at the administrative level asked plaintiff:  "What has been your previous EEO activity?"  (Doc. no. 29, ex. 1.B., interrogatory no. 1.)  It is clear from the context that the question was intended to elicit the basis of plaintiff's claim that she was retaliated against based on  prior protected activity.  Plaintiff's answer to the interrogatory, stated in a letter from her attorney, was that "Complainant filed a sex discrimination complaint approximately five (5) years ago."  (Doc. no. 29, ex. 1.C. interrogatory response no. 1.)  This is a reference to a sex discrimination and reprisal complaint filed by plaintiff in March of 2001 and amended in January of 2002, complaining about her non-selection for a promotion in 2000 and other treatment in 2001 and 2002.

Now, however, in her response brief, plaintiff rejects the 2001-02 protected activity as the basis of her retaliation claim.[8]  Instead of the old protected activity, plaintiff relies on various letters authored by her attorneys, dated from December of 2005 through the spring of 2006, as the protected activity which gives rise to her retaliation claim.[9]  Although not identified as the basis of her retaliation charge at the administrative level, the court assumes for purposes of argument that these attorney-authored letters, which refer to discrimination and retaliation, constitute

---

[8]Plaintiff's response to defendant's proposed undisputed fact no. 9 states that the five-year old protected activity identified in her answer to the investigator's interrogatory is irrelevant because only events occurring immediately prior to and after January 30, 2006 are relevant to plaintiff's claims.  (Doc. no. 33, p. 3.)

[9]Plaintiff now contends that her prior protected activity is in the form of the numerous letters her attorney wrote on her behalf, including a letter to Mr. St. John sent less than three weeks before her termination.  (Doc. no. 33, pp. 7, 21-22.)

protected activity.  *See*, <u>O'Neal v. Ferguson Construction Company</u>, 237 F.3d 1248, 1255 (10th Cir. 2001) (letter authored by attorney, which was an informal complaint disclosing plaintiff's dissatisfaction with new position and which characterized reassignment as retaliatory, constituted protected activity for purpose of *prima facie* case).  In any event, whether she relies on the old activity or the more recent attorney-letters, plaintiff has identified protected activity, so the first element of her *prima facie* retaliation claim is established.

The second element is also met, because termination is an adverse employment action.

As to the third *prima facie* element, plaintiff relies on the timing between plaintiff's protected activity and defendant's treatment of her in late 2005 and in early 2006, to suggest causation.  The 2001-02 protected activity cited in her answer to the investigative interrogatory is too old to suggest causation, and plaintiff's response brief abandons any claim based on that activity.  *Cf.*, <u>Ramirez v. Oklahoma Dept. of Mental Health</u>, 41 F.3d 584, 596 (10th Cir. 1994) (one-and-a-half month period between protected activity and adverse action may, by itself, establish causation).  Although it is questionable whether plaintiff should be able to rely on the letters from counsel when they were not disclosed in the underlying administrative charge, the letters are close enough in time to plaintiff's suspension and termination to suggest causation.

Regardless of the timing issue, defendant challenges plaintiff's evidence of causation by arguing that certain decision-makers were not aware of the 2000-2002 protected activity.  The attorney-letters now relied on by plaintiff were addressed to individuals involved in plaintiff's treatment and termination, such as Mr. McLaury, Mr. Corino and Mr. St. John.  With the attorney-letters now serving as the underlying

protected activity giving rise to plaintiff's retaliation claim, defendant cannot prevail on its argument that the decision-makers were unaware of plaintiff's protected activity.

As shown above, plaintiff's evidence of causation depends upon her ability to rely on letters not identified at the administrative level, not written by her, spanning a period of months.  In these circumstances, the court stops short of finding evidence of causation for purposes of plaintiff's *prima facie* retaliation claim.  Instead, the court presumes *arguendo* that the letters may constitute the protected activity which prompted the alleged retaliation, providing evidence of causation based on the letters' nearness in time to plaintiff's termination.  Accordingly, the court makes no finding as to the third element, and assumes a *prima facie* case of retaliation has been established.

Defendant has identified a non-retaliatory reason for its termination of plaintiff, *i.e.*, plaintiff's continued, unexcused absence.  Accordingly, the court considers plaintiff's evidence of pretext.

Plaintiff argues that the reason given by defendant for its treatment and termination of plaintiff is, by itself, evidence of pretext because this reason admits an improper motive.  The court disagrees.  The fact that the defendant relies on an extended, unexcused absence to terminate an employee, while citing the employee's failure to provide a medical release in the manner requested, and while citing the employee's failure to cooperate in further fitness for duty evaluations, does not suggest pretext.  Further contradicting any suggestion of pretext is the fact that defendant communicated with plaintiff (or her attorneys) several times regarding the seriousness of her AWOL status, the fact that defendant sought permission to get further medical information from plaintiff's doctor regarding plaintiff's condition, and

the fact that defendant suggested that plaintiff consider her eligibility for leave under the Family Medical Leave Act.

Plaintiff has identified no evidence of pretext, and the court finds none. For this reason, defendant is entitled to summary judgment on plaintiff's retaliation claim alleged in count two.

<u>Conclusion</u>

After careful consideration of the pleadings, the record, the parties' submissions and the relevant authorities, defendant's motion for summary judgment is **GRANTED**.

Dated this 16th day of January, 2009.

_____

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

07-1055p009(pub).wpd

-18-